May it please the Court, Katherine Tassinari for Jane Bason, the appellant in this case. I'd like to reserve five minutes for rebuttal. This is a Social Security case, and my client suffers primarily from fibromyalgia and depression. The ALJ found that her depression was not severe and that her physical limitations did not preclude her from performing work at the light exertional level. The plaintiff has the support of her treating rheumatologist, Dr. Ladd, who found that she was limited essentially to part-time work. The plaintiff contests the ALJ's rejection of Dr. Ladd and of her own credibility and contests the ALJ's characterization of Dr. Robinson, the consultative examiner, and Dr. Smyth, the consulting psychologist. The threat throughout this case is that the ALJ ignored or failed or ignored completely or mischaracterized evidence favorable to the plaintiff. The examining psychologist, Dr. Smyth, diagnosed plaintiff with depression. And noted that she frequently strayed off topic during their conversation and needed to be redirected. Her ability to abstract was poor and literal, and she had interpersonal and emotional dysregulation. The ALJ concluded that there were no severe — that depression was not severe, which he may have been able to do if he had actually discussed the parts of Dr. Smyth's report that I just mentioned, and also if he had not mischaracterized Dr. Smyth as saying that Dr. Smyth diagnosed plaintiff with a personality disorder. ALJ described Dr. Smyth as saying that this was her major hurdle in life, and, in fact, Dr. Smyth diagnosed it only provisionally, and he didn't say anything about that being her major hurdle. So it appears that the ALJ did not read the full report of Dr. Smyth or chose to ignore it. The other issue is on the physical aspect. Plaintiff has the support of her treating rheumatologist, Dr. Ladd, and the ALJ's — one of the ALJ's primary reasons for rejecting Dr. Ladd was saying that he conflicted with the opinion of Dr. Robinson. However, Dr. Robinson assessed limitations that were less than a full range of light work and were actually at sedentary. The first treating — the first examining, reviewing — excuse me. The first reviewing DDS doctor looked at Dr. Robinson's report and concluded that that was a restriction to sedentary work, and the second DDS doctor concluded that it limited Ms. Basin to light work. Okay. Boy, I just misstated that. The second one concluded that Dr. Robinson shouldn't be credited at all, actually, and he concluded that plaintiff was limited to light work. The ALJ did not discuss Dr. Alley, the first DDS doctor, nor did he discuss Dr. Robinson. Dr. Robinson's conclusion that plaintiff was limited to less than six hours of work. If plaintiff is limited to sedentary work, that rules out her past work as a general clerk and as an office helper. If she's limited to less than sedentary, as Dr. Ladd said she is, that rules out the receptionist and dater entry positions. The V.E. testified that if plaintiff was limited to even simple sustained work, that would preclude all of her past relevant work. When was the last time Dr. Ladd saw her, 2006? I believe he didn't see her long after he gave his opinion, which I believe was in 2006, Your Honor. That was the last. This case has been more or less in the bureaucracy for six years now. What's her condition now? You know, I don't know. She did see a doctor. After she saw Dr. Ladd, she did see another doctor. And those records show that she continued to suffer from fibromyalgia and complaint of depression, which seemed to even be more severe when you look at the very last Her principal assignment of error to the ALJ is the residual functional ability, isn't it? The ALJ found that she could do some work. She'd been working off and on all during this treatment period, three or four days a week, some weeks, and so on. What is the standard of review for this kind of a finding by the ALJ? Well, it's a de novo review, or the standard of review for the ALJ. No. The district court found that the ALJ had sufficient evidence to support the ALJ's finding. Yes, Your Honor. And the magistrate stated that the ALJ's findings are — should be given — I'm sorry. Deferential. Deferential treatment. But plaintiff's issue is not that the ALJ erred in weighing the evidence. Our argument is that he didn't weigh the evidence at all. And even if the claimant can work part-time, because of her age and because they found no alternate jobs she could perform, she has to be found disabled. So the ALJ found that, you know, she was working part-time, but that didn't amount to substantial gainful activity. So working part-time is — it doesn't hurt her claim any that she worked part-time, and it doesn't hurt even if now she can work — if she can work part-time, it doesn't — it doesn't mean that she's not disabled. She doesn't have to show she can't do anything, particularly in light of her age. What was her age at the time? I guess the critical time here is 2006, isn't it? Well, she was 55 at the time of the hearing, which was in 2008. So she was about 53. So at all — she has a — she's alleged a very early onset date. But if — you know, looking in the last — since about 2003, she's been over 50. Thank you. So she's close to 60 now? Is that what you're saying? Pardon me? She's close to 60 years of age now? You haven't seen her recently? When's the last contact you had with her? Your Honor, I have never met her. What? I haven't met her. Oh, you never met her. No. I only handled the appeals. Oh, okay. And on this case, Mr. Manning has all of the contact with the client. Oh, okay. All right. Good morning. Jamala Edwards, representing the Commissioner. So we have a case here where the ALJ provided a detailed and thorough analysis of the record. As my esteemed counsel here has pointed out, they don't argue with the ALJ's weighing of the evidence. It's whether — how we weighed specific evidence. Well, the ALJ is not legally required to address every single piece of evidence. He's only required to address probative evidence. And further, expanding on that, the ALJ is not required to address every specific utterance and every specific piece of evidence. He doesn't have to go line by line, witness by witness, and describe everything that the doctor or the lay witness or anyone has stated. In this case, the ALJ did consider whether Ms. Bassan had a severe mental impairment at Step 2. He looked at Dr. Smyth's report, and I would say Dr. Smyth actually had good things to say about Ms. Bassan. He said that she — that her interpersonal skills were intact and that she was able to successfully complete a two-hour evaluation session without fatigue. She was cooperative, and rather than saying that she had interpersonal and emotional dysregulation, he said that the record was suggestive of that. It was a purely speculative, not a confirmation that she had those issues. Now, also, the record shows that she socializes on a regular basis, up to five times a month, going to movies and different activities. She exercises. She walks a mile and a half four times a week. She goes to exercise classes. And the ALJ considered these things when looking at the mental and the physical evidence. With regard to Dr. Ladd, the ALJ considered Dr. Ladd's statement that she was limited to less than sedentary work. However, Dr. Ladd had been seeing Ms. Bassan since 1998. Every year since 1998, at his annual exam and at exams in between, midyear exams, he would say, unremarkable findings, normal examination. Now, she would have complaints about things, but he concluded it was unremarkable. Let's stay the course here. Also consistent throughout this entire period, she worked part-time at a family member's business. She told her medical providers that she left this job because the commute was too far. She did not say anything about leaving this job due to physical limitations or mental limitations. She also did not provide any statements from her employers substantiating her limitations or her needs for extra breaks or mental limitations. And the ALJ found that while part-time work does not automatically stop you from being able to get benefits, part-time work does show an adverse credibility conclusion that shows, well, hey, you can do some work, you can do these activities, and you worked for your family members, and you didn't even obtain a statement from your family members saying that these were your limitations. Your doctors say unremarkable findings. The, you know, the reviewing physician, Dr. Alley, he did find limited her dysentery, and Dr. Robinson arguably limited Ms. Bazin to less than light work. However, the ALJ did not ignore this evidence. He looked at the evidence. He cited to the record in the decision, he cites to Dr. Alley's report and Dr. Robinson's report, and says, I have considered the opinion that she might be limited to sedentary work. However, given excellent cardiovascular testing that showed that she had an excellent ability to perform on a treadmill, her daily activities, her husband's statements about her activities, and her own statements, I agree with Dr. Berner, the other reviewing physician, that she could perform light work. Now, the standard for a Social Security case is that it's supported by substantial evidence. Here, the evidence is substantial. The ALJ addressed the medical evidence. The law says he does not have to address utterance by utterance, but substantial evidence of record supports the ALJ's decision. When you're looking at the record or looking at the decision and saying, well, it could go this way and go this way, if substantial evidence supports the ALJ, then the court must uphold the ALJ's decision. The court has no other questions? Thank you. Thank you. May it please the Court. The Commissioner may wish that the ALJ address Dr. Alley, but he did not. The ALJ addressed the DDS opinions on excerpt of record looking at 17. It's page 7 of the ALJ's decision, but it's excerpt of record 17. He addresses Dr. Berner. He describes Dr. Robinson as saying, quote, that plaintiff had the ability to stand or walk for 6 hours out of 8 hours. Again, that's at 17. However, Dr. Robinson said that she had the ability to stand or walk less than 6 hours out of 8 hours because of decreased strength and decreased range of motion in the hips. The ALJ does not mention at all in this decision that Dr. Robinson said she has problems lifting. The ALJ did not mention that Dr. Robinson said that the plaintiff can only lift up to 15 pounds, which would take her into the sedentary not light capacity. There is no place in the ALJ's decision where this was reasoned out or discussed. And that's why we're appealing. Counsel may have misspoke, but Dr. Ladd last saw plaintiff in 2006, which was around the time that he wrote his opinion. So it was based on current information. The ALJ may not have to discuss every piece of evidence. The record has 500 pages or so, and he doesn't have to address every single word. But he does have to address those portions of the record that conflict with his assessment of the residual functional capacity. And that's in the agency's own rulings, SSR 96-8P, which I cite in my brief. There is nowhere in the ALJ's decision, nor is there in the Commissioner's comment and observation that plaintiff frequently strayed during her conversation. There's no discussion about her emotional dysregulation. Dr. Smyth's testimony really made her sound pretty good, able to do quite a bit. Are you talking about his conclude his diagnoses or her reports to him? So his whole approach, his whole approach to it was fairly favorable, I thought. Well, when he did the multi the mental status examination, he didn't notice problems with attention, and she seemed to do pretty good on the mental status. But then in his discussion with her, he did note that she had to be frequently redirected back to the topic at hand. Well, it's certainly a point of view, but it's not the ALJ didn't weigh that, you know. Yes. Well, did she ever report to any doctor that her depression prevented her from working? I don't know that she phrased it like that, Your Honor. Well, did she say, well, you know, I'm suffering from depression and it keeps me from working? Did she say that? I don't think that she saw depression as her as what was stopping her from working. I think she really sees fibromyalgia as her limitation, but I'd submit, Your Honor, that her impression of what's most disabling isn't the most relevant factor here. And there's lots of case law from this circuit that a person's own judgment about this and their need for treatment may not be something that they have the mental capacity to be able to articulate or even appreciate. I understand, Your Honor. Okay? Thank you. The matter is submitted. And we'll do the next item. Hope Key v. Commissioner.
judges: Goodwin, Pregerson, Christen